# IN THE MATTER OF A. GOMEZ & COMPANY,
## Bankrupts.

---

San Juan, Bankruptcy, No. 151.

ADMINISTRATION OF FIRM ASSETS AFTER DEATH OF PARTNER.

Bankruptcy—Adjudication of Dissolved Copartnership.
   A copartnership which was dissolved by the death of its manag-
   ing partner (*gestor*), but whose affairs have not been finally settled,
   may be adjudicated in bankruptcy.

Opinion filed January 7, 1916.

---

*Mr. Harry F. Besosa* for petitioner.

*Mr. Juan Hernandez Lopez* and *Mr. Frank Antonsanti* for
respondents.

HAMILTON, Judge, delivered the following opinion:

By agreement of counsel all questions are eliminated except
whether or not the partnership of A. Gomez & Company, con-
sisting of one regular or managing partner, A. Gomez, (*gestor*),
and one special partner (*comanditario*), Manuel Carvajal, can
be adjudicated in bankruptcy after the death of the managing
partner on the petition of Carvajal, the only other surviving
partner.

The law of Porto Rico as to partnerships is contained in the

In the Matter of A. Gomez & Co.

Code of Commerce, and the more important provisions are as follows:

No member can demand the delivery of the capital due him from the common fund until all the debts and obligations of the association have been extinguished, etc. Code of Commerce, art. 235 (Rev. Stat. of P. R. 7794). The creditors of the partnership shall be preferred to the creditors of each partner with regard to the partnership property. Rev. Stat. of P. R. § 4707. Article 148 of the Code of Commerce (Rev. Stat. of P. R. 7707) provides that special partners cannot take any part whatsoever in the management of the business of the copartnership. Articles of association, executed with the essential requisites of law, shall be valid and binding between the parties thereto, no matter what their form, and conditions and combinations, legal and honest, are included therein, provided they are not expressly prohibited by this Code. Code of Commerce, art. 117 (Rev. Stat. of P. R. 7676). In the liquidation and division of the common capital, the rules established in the articles of association (partnership contract) shall be observed. Code of Commerce, art. 227 (Rev. Stat. of P. R. 7786).

Article 122 of Code of Commerce of Porto Rico is as follows:

"As a general rule commercial associations shall be established by the adoption of any of the following forms:

"1. The regular general copartnership in which all the partners, under a collective and commercial name, bind themselves to participate in the proportion which may be established, in the same rights and obligations.

"2. The limited copartnership to which one or more persons contribute a specific amount of capital to a common fund, in or-

der to be liable for the social transactions executed exclusively by others under a collective name.

"3. The corporation, in which the members form the common fund by means of specific parts or portions, represented by shares or in any other unquestionable manner, leaving its management to removable managers or administrators, who represent the company under an appropriate denomination, according to the purpose or undertaking the funds are destined to."

The partnership articles of A. Gomez & Company, dated August 13, 1907, provide that upon the death of any of the partners the firm shall be placed in liquidation.

2. The more important consideration, however, is not what the local law may provide as to partnerships, but what the Bankruptcy Law provides as to the bankruptcy of such partnerships under the circumstances of this case. There are certain general principles governing such a case heretofore decided in bankruptcy courts, which may be summarized as follows:—

A partnership during the continuation of the partnership business, or after its dissolution and before final settlement thereof, may be adjudicated in bankruptcy. Bankruptcy Law, § 5-A. The court of bankruptcy which has jurisdiction of one of the partners may have jurisdiction of all the partners and of the administration of the partnership and individual property. Bankruptcy Act, § 5-C. The Bankruptcy Act of 1898 recognizes the equitable rule that partnership property is primarily a fund for the payment of the partnership debts, and that the interest of one partner is subject to that special equity, and attaches only to the surplus remaining after the payment of the partnership debts. And so it has been held that a copartnership may be adjudged a bankrupt after the death of one partner, up-

on an act of bankruptcy committed by the surviving partner, and that the adjudication of bankruptcy of a copartnership does not necessarily draw into the proceeding the estate of every individual member. There have been several adjudications in which the question has been fully considered, and in the result of which we fully concur. Chemical Nat. Bank v. Meyer (D. C.) 1 Am. Bankr. Rep. 565, 92 Fed. 896, affirmed under appeal, sub nom. Re Meyer, 39 C. C. A. 368, 3 Am. Bankr. Rep. 559, 98 Fed. 976.

"We perceive no valid reason why this manifest purpose of the Bankruptcy Act should not have full effect. In the case of a decedent the proper probate court assumes the charge of and the disposition of his estate. But even then the partnership of which he was a member might, as we think, be properly adjudicated bankrupt as against the survivors, and the partnership estate administered by the bankruptcy court, since the decedent's interest in the estate extends only to the surplus after payment of the partnership debts. So, also, in respect to a minor, neither he nor his estate is responsible for debts contracted by him during his minority. And yet we perceive no objection, where he is a partner in a copartnership, his interests therein being subordinate to the copartnership debt, to the adjudication of such copartnership as a bankrupt under the provisions of the present Bankrupt Act. Conceding for the purpose of the argument—a question which we do not determine—that an insane person may not be adjudicated a bankrupt, . . . nevertheless we think a copartnership of which he was or is a member may be so adjudicated, and the firm property applied to the payment of the firm debts. There is here no attempt to adjudicate the insane partner a bankrupt individually. The proceeding is mere-

ly to subject partnership property to the payment of partner-
ship debts and for an adjudication of bankruptcy against the
same partner. The argument in the cases cited is so complete
and satisfactory that the subject needs no further discussion.
The decree of the court below is reversed, and the cause is re-
manded to the court below with a direction to proceed in con-
formity to this opinion." Re Stein, 11 Am. Bankr. Rep. 536.

3. Coming now to the points directly involved in the case at
bar, the principle is that in bankruptcy a partnership is a quasi
person, a separate entity from the partners. A partner, or in
the case of his death his estate, only has such right to the firm
property as may exist after the payment of its debts, in other
words, after liquidation has been carried out according to law.
The exact question is, What happened to the partnership upon
the death of the managing partner, Gomez? The articles pro-
vided that in such a case its business should be liquidated, but
they did not provide and could not provide in what court the
liquidation was to proceed. If the firm was solvent, there is no
question the liquidation would be by the surviving partner out of
court altogether, or under proper circumstances would proceed
in a local court under the Code of Commerce. If, however, a
proper case for bankruptcy was presented, the liquidation pro-
vided for must be in a court of bankruptcy. The parties could
not make any different contract if they had desired. There is
no doubt that the estate of a deceased person cannot be placed
in bankruptcy.

"We are next to inquire whether the individual property of
the estate of Jones could be drawn into and administered in the
bankrupt court by a proceeding against the firm, of which, when
alive, he had been a member. Whatever power the bankrupt

court possesses over the subject of bankruptcies, it derives exclusively from the Bankrupt Act. Power not conferred by the act it does not possess. We look in vain through its sections to find any authority conferred to put the estate of a deceased person into bankruptcy. The twofold purpose which the Bankrupt Act, has in view, *viz.*, the equal and just distribution of the bankrupt's estate among his creditors, and the discharge of the bankrupt from his debts, does not require the application of the law to the estate of the deceased person. The laws of the states provide for an equitable and just distribution of the decedent's estate, and death has already discharged him of all personal liability. The Bankrupt Law could, in the case of a deceased person, accomplish nothing not already accomplished without it. While there is no direct authority given by the Bankrupt Act over the estates of deceased persons, the implication from what is expressed is strongly against such a jurisdiction. Section 12 of the act (Rev. Stat. § 5090) declares, if the debtor dies after the issuing of the warrant, the proceedings may be continued and concluded in like manner as if he had lived; that is, the estate of a deceased may be administered after his death if the court has acquired jurisdiction over it in his lifetime." Adams v. Terrell, 4 Woods, 337, 4 Fed. 801.

This, however, is not sought in the case at bar. The case of Rudolph v. Evans, 161 Fed. 590, 591, holds as follows: "The death of W. R. Scogin in December 1903, dissolved the firm of Evans & Co., composed of Evans and Scogin. The firm was extinguished. It was civilly dead—rendered so by the death of Scogin. The firm was a distinct entity in law. With Scogin's death it ceased to exist. Consequently no bankruptcy proceeding could thereafter be instituted against this partnership enti-

In the Matter of A. Gomez & Co.

ty. As the firm no longer existed, all that Evans could do was to go into bankruptcy, individually. Therefore, his voluntary petition in bankruptcy was only, under the law, the bankruptcy petition of C. R. Evans [the surviving partner]."

This short opinion was not directed to holding the old firm liable, but to the point whether a new firm was constituted by admissions of other parties. It is, therefore, not in conflict with the well-considered case of Re Stein, above cited. And the Bankruptcy Law on the subject seems to be sufficiently explicit. Section 5-A expressly provides that, despite the dissolution of a partnership, it may be adjudicated in bankruptcy at any time before the final settlement of its affairs. In the case at bar the death of Gomez may have dissolved the partnership, but certainly its affairs had not been finally settled. The firm might for some purposes be considered dead, but a probate court had no jurisdiction of its assets. The probate court can only administer the property that comes to an individual after the partnership debts have been paid off. No probate court can administer the affairs of a dead partnership. No doubt the local courts could do so if there were no provision on the subject in the Bankruptcy Act, but there is the above provision, § 5-A, in that act, and it does not appear that this court made any mistake in taking jurisdiction of the petition. It remains only to say that care must be had in administering the partnership assets not to administer, as would be done in the case of live partners, the individual property of Gomez. That under the decisions is a matter for the local courts.

It follows, therefore, that the petition of the widow and children of Abraham Gomez to have the petition dismissed must be denied.

It is so ordered.