**In re VERSES I, a partnership, Debtor.**

**Bankruptcy No. 80–693.**

United States Bankruptcy Court,
W. D. Pennsylvania.

Sept. 28, 1981.

John R. Banke, Pittsburgh, Pa., for debtors.

Martin M. Sheinman, Pittsburgh, Pa., trustee.

Joseph A. Nese, Pittsburgh, Pa., for Peoples' Bank of Unity.

### MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

This case comes back to this Court for further proceedings after an appeal to the United States District Court for the Western District of Pennsylvania. This Court had ruled on March 27, 1981 that Richard A. Harchick and Joseph F. Vavra were general partners of the partnership Verses I. After hearing the case, the Bankruptcy Court requested briefs which were not forthcoming. The Court then issued a brief order.

The District Court issued its Order dated August 18, 1981 which states:

The within case is remanded to the Bankruptcy Court for further consideration. In the event the record of the hearing exists it may be furnished. If it does not exist the Bankruptcy Court may create a record. At this time we have no record to consider.

Although the appellant did not present a record, there is a record in this case, which consists of:

1. 86 pages of testimony.
2. Tapes of a First Meeting of Creditors.
3. Tapes of a Second Meeting of Creditors.

The confusion in the case results from a misunderstanding of the significance of the findings by the Bankruptcy Court and the inadequate record presented to the District Court. Neither of the admitted partners, Carolyn Harchick and Antoinette M. Vavra, were adjudicated to be Debtors (Bankrupts), nor were the disputed "limited" partners adjudicated to be Debtors. (The former Act's term for Debtor was Bankrupt.) What the Bankruptcy Court concluded was that Joseph F. Vavra and Richard A. Harchick, admitted "limited" partners, were found to be in fact general partners. This finding was based on evidence presented at Court hearings and at the meetings of Creditors. The evidence and findings can be summarized as follows:

1. That Richard A. Harchick and Joseph F. Vavra signed the Fictitious Name Certificate which stated that they were the owners of the business known as Verses I. (Pages 12 and 13 of the Transcript)

2. That the Fictitious Name Certificate was advertised in the Pittsburgh Legal Journal. (Pages 12 and 13 of the Transcript)

3. That Richard A. Harchick and Joseph F. Vavra were listed on Schedule K's, the Partnership Income Tax Returns and sales tax returns, as partners, and Mr. Harchick signed the returns as a partner of Verses I. (Side B of tape of Second Meeting at 443)

4. That Richard A. Harchick made an application to the Commonwealth of Pennsylvania for a sales tax number signing his name as a partner of Verses I. (Side B of tape of Second Meeting at 416)

5. That Richard A. Harchick looked after the books of Verses I. (Side B of tape of Second Meeting at 379)

6. That Richard A. Harchick and Joseph F. Vavra discussed with an attorney the formation of the partnership prior to the filing of the Fictitious Name Certificate. (Side B of tape of Second Meeting at 294)

7. That the names of all four parties appeared on the Verses I checks (Side B of tape of Second Meeting at 210), and tradespeople had asked where Verses I did its banking. (Side B of tape of Second Meeting at 115)

8. That all four parties signed the lease on behalf of Verses I. (Side B of tape of Second Meeting at 48)

9. That all four parties signed the loan agreements with the Peoples Bank of Unity, which money was used for the partnership. (Page 42 of the Transcript)

10. That Richard A. Harchick and Joseph F. Vavra worked at the store on occasion. (Page 59 of the Transcript)

11. That the parties admitted that Joseph F. Vavra and Richard A. Harchick were "limited partners" on the Voluntary Bankruptcy Petition (Answer to Question 21 of the Statement of Affairs of the Bankruptcy Petition), and at the First Meeting of Creditors. (Side A of tape of First Meeting at 11)

12. The parties through their attorney admitted they had not complied with the Pennsylvania Uniform Limited Partnership Act. (Side A of tape of Second Meeting at 47)

13. The American Greeting Corporation has sued the partnership and all four individuals to recover monies owed [Bankruptcy Petition at page 4–16.1 (should be 14–16.1)], and the four individuals have Counterclaimed. (Page 65 of the Transcript) This evidence clearly demonstrated to the Court that Richard A. Harchick and Joseph F. Vavra held themselves out to be partners of Verses I, that they benefitted by the arrangement, and that third parties relied on those representations.

CONCLUSIONS OF LAW

We agree with the District Court that partners cannot be made to be involuntary Debtors (Bankrupts) and a trustee appointed to take control of their assets by estoppel. That is quite different from holding that the trustee cannot seek payment from the partners, either in an adversary proceeding in this Bankruptcy Court or in an assumpsit action in Common Pleas Court. The Code places a duty on the trustee to seek payment from any party owing money to the partnership.

The partnership Verses I voluntarily filed a Chapter 7, admitting that it consisted of the two wives as general partners and two husbands as "limited partners". None of the partners have, as of this time, filed individually as Debtors (Bankrupts). The assets of these individuals are not under the control of the trustee because the individuals are not Debtors (Bankrupts).

However, under the Bankruptcy Code and under Pennsylvania law, partners are liable for the debts of the partnership. By admitting to be general partners, the wives admitted their liability.

The dispute is whether the husbands had so deported themselves as to become general partners of Verses I and therefore liable for its debts also. The Bankruptcy Court found that they had in fact held themselves out to third persons as partners. We did not find any of the partners to be Debtors (Bankrupts).

Under Pennsylvania law, in order to form a limited partnership one has to comply with the Limited Partnership Act. If the partners fail to comply with the statutory requirements and participate as partners, they are treated as general partners as to third persons and creditors. *Ruth v. Crane*, 392 F.Supp. 724, 733 (E.D.Pa.1975). The parties clearly admit that they did not comply with the Act. Richard A. Harchick and Joseph F. Vavra's counsel argue that therefore they are not partners at all. The Court found that the evidence was otherwise, because they had participated as partners.

The Order from the District Court states that a Bankruptcy Court cannot adjudicate a partnership unless there is an intentional partnership. 1 Remington on Bankruptcy

(5th Ed.) § 85, p. 148. This Court agrees with that proposition. That is also the intent of the 1978 Bankruptcy Act. See H.R. Rept.No.95–595, p. 197, U.S.Code Cong. & Admin.News 1978, p. 5787. This Court, in fact, did not adjudicate, i.e., declare bankrupt, any of the partners or the partnership. The admitted general partners, Carolyn Harchick and Antoinette M. Vavra, voluntarily placed the partnership but not themselves in bankruptcy. What this Court did was follow *In re Ganaposki*, 27 F.Supp. 41 (M.D.Pa.1939), cited by the District Court in its Memorandum Opinion. The District Court in Ganaposki was reviewing a referee's finding that Mr. Ganaposki could be adjudicated a bankrupt on an *involuntary* petition because Mr. Ganaposki had held himself out as a partner of the bankrupt partnership. The Court stated:

> To justify an adjudication the evidence must show that a partnership in fact existed between the alleged partners. The mere holding out of William Ganaposki is not sufficient to create this relationship. Third persons who are misled by such holding out and act to their detriment have rights against such individuals so holding out based upon the doctrine of estoppel. However, the doctrine of estoppel is not sufficient to create a partnership as between the alleged partners, or as to third parties who have not been misled. *In re Ganaposki*, supra, at 42.

The Trustee in this instant bankruptcy represents creditors who have been misled. Section 544(a)(1) of the Bankruptcy Code states:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists.

The Trustee's remedy is not to have Richard A. Harchick and Joseph F. Vavra involuntarily declared to be Debtors (Bankrupts). The Trustee attempted to follow the procedure set forth in Section 723 of the Bankruptcy Code. Section 723 states that each general partner is liable for debts of a partnership:

> (a) If there is a deficiency of property of the estate to pay in full all claims allowed in a case under this title concerning a partnership, then each general partner in such partnership is liable to the trustee for the full amount of such deficiency.

Before the Trustee could petition for payment, he sought to have Joseph F. Vavra and Richard A. Harchick declared "involuntary" general partners. This does not require that the general partners be adjudicated involuntary Bankrupts. The Trustee may seek payment in many ways. The defendant confuses the issue of finding an individual to be a general partner with the separate issue of adjudicating any partner a Debtor (Bankrupt). *In re Kuntz*, 33 F.2d 198 (M.D.Pa.1929) a person was alleged to be a partner in a bankrupt partnership. A Mr. Stough, an alleged partner, had filed a Fictitious Name Certificate on behalf of a partnership. Later he assigned all of his interest in the partnership but never gave formal notice of his withdrawal from the partnership. Under these facts in *Kuntz*, the Court found Stough not to be a member of the partnership. This case cannot be cited for the proposition that you cannot find a general partner by estoppel to be liable. Kuntz and Ganaposki merely state you cannot adjudicate an individual partner a Bankrupt by estoppel. These cases do not deprive the Courts of the obligation of determining the composition of a partnership, nor do they remove the duty of the Trustee to collect from the partners the partnership liabilities.

It is generally accepted that, for bankruptcy purposes, a partnership is a separate and distinct entity from its partners. *Liberty Nat. Bank v. Bear*, 276 U.S. 215, 48 S.Ct. 252, 72 L.Ed. 536 (1928); *In Re*

*Jercyn Dress Shop*, 516 F.2d 864 (2d Cir. 1975); *First Nat. Bank of Herkimer v. Poland Union*, 109 F.2d 54 (2d Cir. 1940). Likewise, a partnership may be adjudged bankrupt irrespective of the bankruptcy of the individual partners. *Bear*, supra; *Jercyn Dress Shop*, supra. *In Re Aboussie Bros. Constr. Co.*, 8 B.R. 302 (1981).